IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>RAMIRO CORVERA-LEAL and<br>MARIA JESUS CORVERA,<br><br>   Defendants. | FINDINGS OF FACT, CONCLUSIONS<br>OF LAW, AND ORDER<br><br>Case No. 1:07-CR-00107DAK<br><br>Judge Dale A. Kimball |

Defendants Ramiro Corvera-Leal and Maria Jesus Corvera move to suppress all evidence obtained from an allegedly unlawful detention, including Defendants' statements, Defendants' consent to search the hotel room, and any evidence obtained from the hotel room and vehicle search. The court held an evidentiary hearing on the motion on April 21, 2008. Following the evidentiary hearing, the parties submitted briefing and, on June 5, 2008, the court heard closing arguments on the motion. At both the evidentiary hearing and closing arguments, Benjamin A. Hamilton represented Defendant Corvera-Leal, Mark J. Gregersen represented Defendant Jesus Corvera, and Vernon Stejskal represented Plaintiff the United States of America. Following closing arguments, the court took the matter under advisement. Now, having carefully considered the evidence and the memoranda submitted by the parties, as well as the relevant law and facts relating to the motion, the court renders the following Findings of Fact, Conclusions of Law, and Order.

**FINDINGS OF FACT**

1. On February 21, 2007, an anonymous source reported suspicious activity—specifically, short-term traffic—occurring at the Comfort Inn Hotel in Layton, Utah. The identified hotel room was room #120. The identified vehicle was a white Volvo.

2. On February 21, 2007, Agent M. Howard and Agent Hernandez responded to the anonymous report at the hotel. Lieutenant Swanson and Agents Ervin, Miya, Baggs, and Thompson also assisted.

3. Upon arriving at the hotel, Agents Howard and Hernandez spoke with the night clerk. During this conversation, Lieutenant Swanson contacted Agent Howard and stated that two individuals, later identified as Defendants, were seen entering the Volvo and that two agents had approached the vehicle.

4. Agents Thompson and Erwin were the two agents that approached the Volvo in the hotel parking lot.

5. Earlier that day, Agents Thompson and Erwin had been assigned to assist Agent Howard in a controlled purchase of narcotics using a confidential informant and had seen Defendant Jesus Corvera arrive at the drug buy location in a white Volvo. When she arrived at the drug buy location, Defendant Jesus Corvera was the only occupant in the vehicle. After the controlled drug buy had occurred, Agents Thompson and Erwin, acting in a surveillance capacity, followed Defendant Jesus Corvera to the Comfort Inn. After arriving at the Comfort Inn, Defendant Jesus Corvera parked the Volvo in the hotel parking lot, exited the vehicle, and entered the hotel. Agents Thompson and Erwin watched the Volvo from an observation point near the hotel.

6.  At some point during their surveillance of the Volvo, Agents Thompson and Erwin saw a male and female approach and enter the vehicle.

7.  The Agents pulled up to the Volvo in an unmarked vehicle.

8.  The Agents parked their vehicle at an angle at the end of the parking stall located directly next to the Volvo's stall.  A distance of approximately half a parking stall existed between the front of the Agents' vehicle and the rear end of the Volvo.

9.  The Agents exited their vehicle and approached the Volvo on foot.  Agent Erwin, who weighs approximately 260 pounds, approached the passenger side of the Volvo where Defendant Jesus Corvera sat.  Agent Thompson approached the drivers side.

10. By the time Defendant Corvera-Leal, sitting in the Volvo's drivers seat, spotted the approaching Agents, he had started the car, placed it in reverse, and was looking behind him in preparation for backing out of the parking stall.  When he saw the Agents Defendant Corvera-Leal halted.

11. Although the Agents' vehicle was not directly blocking the Volvo's exit from the stall, the proximity and angle of the Agents' vehicle, along with the arrival of the Agents on both sides of the Volvo, made it difficult for Defendant Corvera-Leal to maneuver out of the parking space without endangering the Agents' safety.

12. The Agents did not wear police uniforms.  They had their badges hanging from their necks.

13. Agent Erwin knocked on the passenger side window and identified himself to Defendant Jesus Corvera as a police officer.  Agent Erwin also informed her that they were investigating a drug deal that she could have been involved in, and he asked her if the car

3

was hers. Defendant Jesus Corvera responded affirmatively. Agent Erwin then asked her if he could search the vehicle, the hotel room, and her purse. She responded affirmatively. A search of hotel room #120 uncovered methamphetamine.

14. When Defendant Corvera-Leal saw Agent Thompson approaching on the drivers side, he rolled down his window and said, "Hello, Officer." Agent Thompson thought Defendant Corvera-Leal seemed a little nervous and surprised. Agent Thompson asked to see Defendant Corvera-Leal's identification and spoke to him about the investigation. Agent Thompson asked him if there were narcotics in the car. Defendant Corvera-Leal indicated that there were no illegal drugs inside the Volvo.

15. Agent Howard then communicated to Agent Thompson that Defendant Corvera-Leal needed to exit the vehicle. Defendant Corvera-Leal overheard the request from Agent Howard, and upon Agent Thompson's asking, promptly exited the Volvo.

16. After Defendant Corvera-Leal exited the vehicle, Agent Thompson asked him if he had any weapons. The reasons for Agent Thompson's request included Defendant Corvera-Leal's nervousness and a prior dealing between the Agent and Defendant Corvera-Leal. Defendant Corvera-Leal told Agent Thompson that he had a pocket knife in his right pocket. Agent Thompson retrieved the pocket knife.

17. Because of the location of the confiscated knife, Agent Thompson felt it necessary to conduct a pat down. In conducting the pat down, Agent Thompson felt a tightly wrapped package in Defendant Corvera-Leal's pocket. Based on his experience, Agent Thompson believed the package was narcotics.

18. Agent Thompson pulled the package out of Defendant Corvera-Leal's pocket. The substance in the package appeared to be marijuana. Agent Thompson subsequently placed Defendant Corvera-Leal in custody and informed him that he was not free to leave. A further search of Defendant Corvera-Leal's person revealed additional narcotics.

19. The government indicted Defendants for knowingly and intentionally possessing with intent to distribute fifty (50) grams or more of actual methamphetamine.

20. Interactions between the Agents and Defendants were described as conversational in tone.

21. The Agents did not touch Defendants.

22. Agents Thompson and Erwin did not memorialize the controlled drug buy in their written reports.

23. Agent Thompson is trained in report writing and understands the importance of complete and accurate report writing.

24. The Agents' testimony as to the controlled drug buy was consistent, and the Agents appeared and testified before the court as credible and trustworthy witnesses, acting in good faith.

## CONCLUSIONS OF LAW

1. The Tenth Circuit has identified two types of police-citizen encounters that implicate the Fourth Amendment's protection against unreasonable searches and seizures:

investigative detentions and arrests.  *See United States v. Ringold*, 335 F.3d 1168, 1171 (10th Cir. 2003).

2. Consensual encounters, a third type of police-citizen encounter identified by the Tenth Circuit, do not implicate the Fourth Amendment.  *See id.*  "A consensual encounter is the voluntary cooperation of a private citizen in response to noncoercive questioning by a law enforcement officer."  *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000) (quotations and citation omitted).  "Whether an encounter can be deemed consensual depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter."  *Id*.  (quotations and citation omitted).  That is, an encounter is no longer consensual when a reasonable person has an "objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her own way."  *Id*. at 1177 (quotations and citation omitted).

3. Determining whether an encounter is consensual is based on a totality of the circumstances.  *See Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005).  The Tenth Circuit has provided a nonexhaustive list of factors relevant to determining whether a seizure occurred.  *See id*.  The list includes

> "1) the threatening presence of several officers; 2) the brandishing of a weapon by an officer; 3) some physical touching by an officer; 4) use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; 5) prolonged retention of a person's personal effects . . . ; 6) a request to accompany the officer to the station; 7) interaction in a nonpublic place or a small, enclosed place; 8) and absence of other members of the public."

*Id*. (quoting *United States v. Hill*, 199 F.3d 1143, 1147- 48 (10th Cir. 1999)) (alteration in original).  Importantly, however, "no single factor can dictate whether a seizure occurred," and courts "have steadfastly refused to view any one of these factors as dispositive."  *Ringold*, 335 F.3d at 1172 (quotations and citation omitted).

4. Based on the totality of the circumstances, a reasonable person in Defendants' position would not have felt free to terminate the encounter with Agents Thompson and Erwin.  The location of the Agents' vehicle and the presence of the Agents on either side of the Volvo made it difficult for Defendant Corvera-Leal to extricate the Volvo from the parking stall without endangering the Agents' safety.  *See United States v. Sanchez*, 89 F.3d 715, 718 (10th Cir. 1996) (noting the relevancy of whether officer obstructed the defendant's ability to exit parking lot in determining whether a seizure occurred).  Additionally, Defendant Corvera-Leal overheard Agent Howard tell Agent Thompson to remove Defendant Corvera-Leal from the Volvo.  *See United States v. Vera*, 457 F.3d 831, 835 (8th Cir.  2006) ("An authoritative order or command to exit a vehicle effects a seizure.").

5. An investigative detention must be "'supported by a reasonable suspicion of criminal activity.'" *Ringold*, 335 F.3d at 1171 (quoting *United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998)).

6. In determining whether there was reasonable suspicion of criminal activity, the court considers the totality of the circumstances.  *See United States v. Sanchez*, 519 F.3d 1208, 1215 (10th Cir. 2008).  "In doing so, [the court] 'defer[s] to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'"  *Id*.

(quoting *United States v. Santos*, 403 F.3d 1120, 1124 (10th Cir. 2005)) (additional quotations and citation omitted). "'A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct.'" *Id*. (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002) (alteration in original). And "'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *Id*. (quoting *Arvizu*, 534 U.S. at 274).

7. The following circumstances provided the Agents with reasonable suspicion of wrongdoing sufficient to support the detention: the observed controlled drug buy earlier in the day involving the white Volvo and Defendant Jesus Corvera; the reports of short-stay traffic, indicative of narcotics trafficking, involving room #120 and a white Volvo; and Defendant Corvera-Leal's observed nervousness when Agent Thompson asked for his identification and conversed with him about the Agents' investigation, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("recogniz[ing] that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion").

8. An officer's failure to include certain facts and events in his or her written police report does not render the officer's testimony on such facts and events incredible. *See United States v. Eddy*, 8 F.3d 577, 582 (7th Cir. 1993).

9. The Agents' failure to discuss the controlled drug buy in their written reports need not alter this court's finding that the Agents' testimony regarding the controlled buy was credible. *See id*.

## CONCLUSION

Based on the foregoing, Defendants' Motion to Suppress is DENIED.

DATED this 1st day of July, 2008.

BY THE COURT:

*[signature: Dale A. Kimball]*

DALE A. KIMBALL

United States District Judge